# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| WORTH S., | § | |
| by and through his next friend, | § | |
| Elizabeth S.G., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-2776-K |
| | § | |
| DALLAS INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dallas Independent School District's Motion to Dismiss Plaintiffs' First Amended Complaint and Brief in Support (Doc. No. 11) (the "Motion to Dismiss"). The Court has carefully considered the Motion to Dismiss, responsive briefing, relevant portions of the record, and applicable law. Because the Court finds that Plaintiff W.S., by and through his next friend, Elizabeth S.G, has failed to first exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA") for the allegations in the First Amended Complaint (Doc. No. 8) and therefore the Court lacks subject matter jurisdiction over this case, the Court **GRANTS** the Motion to Dismiss and **DISMISSES** Plaintiff W.S.'s claims without prejudice.

1

## I.    Factual and Procedural Background

This case arises from the alleged ingestion of inedible objects by W.S., a former special education student, ("Plaintiff" or "W.S.") while he was supervised by employees at Dallas Independent School District, who had notice that W.S. was a swallow and choke risk. First Amended Complaint ("Compl."), Doc. No. 8, at 3-4. The following is a recitation of the facts and in no way includes findings of fact or conclusions of law. This recitation is strictly for purposes of providing context to the Motion to Dismiss.

Elizabeth S.G., W.S.'s next friend, ("Elizabeth") brings this lawsuit against Dallas Independent School District ("Defendant" or "DISD"), on behalf of W.S., for discrimination in violation of Section 504 of the Rehabilitation Act of 1973, 20 U.S.C. § 701, *et seq.* ("Section 504"), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* ("ADA"). Plaintiff alleges that Defendant's failure to sufficiently supervise and ensure one-on-one supervision while he attended a DISD school resulted in him swallowing inedible objects and incurring medical expenses, along with mental anguish, pain, and suffering. *Id.* at 4-5.

Plaintiff filed the Original Complaint (Doc. No. 1). Defendant filed a Motion to Dismiss Plaintiffs' Original Complaint (Doc. No. 7), but upon Plaintiff's filing of the First Amended Complaint (the "Complaint") (Doc. No. 8), this Court denied the Motion to Dismiss Plaintiffs' Original Complaint as moot.

According to the Complaint, W.S. was a student at Zan Wesley Holmes, Jr. Middle School, a school within DISD, during the 2018-2019 and 2019-2020 school

years. Compl. at 2. W.S. is a disabled individual with several diagnoses, including Down Syndrome and Autism. *Id.* W.S. received services in accordance with an Individualized Education Program ("IEP") under the IDEA.

For context, an IEP is a written statement for each disabled student that includes a statement of the student's level of academic achievement and functional abilities, and a statement of the *special education and supplementary aids and services* that need to be provided for the disabled student to be involved in and process in the curriculum, participate in extracurriculars, and be educated with other disabled and non-disabled students. *See* 20 U.S.C. § 1414(d)(1)(A)(i); 34 C.F.R. § 300.320 (emphasis added). An IEP is created by a group of people consisting of school administrators, teachers, parents, and other school personnel. *See* 20 U.S.C. §§ 1401(14), 1414(d). In Texas, the group of people that create the IEP is referred to as the Admissions, Review, & Dismissal ("ARD") committee. *See* 19 TEX. ADMIN. CODE § 89.1050.

On May 2, 2019, Elizabeth, concerned with W.S.'s drooling and after an evaluation at the emergency room, e-mailed DISD employees to remind them of W.S.'s IEP that states his risk for choking from placing objects in his mouth. Compl. at 2. The e-mail explained that W.S. "struggles with putting objects into his mouth and choking. [W.S.] spent the first nine years of his life sitting in a crib in an orphanage . . . [where] he was both starved and deprived of all sensory input." *Id.* Elizabeth warned that drooling is "not normal or baseline behavior for [W.S.] . . . [and] if [he] is drooling profusely, the nurse and parents should be contacted immediately." *Id.* at 3. Elizabeth

3

also gave the DISD employees a suggested safety plan of how to keep W.S. from swallowing inedible objects and choking. *Id.* Elizabeth was told by a DISD employee that there were training issues that needed to be addressed. *Id.* During this time, a request was made to enroll W.S. in an Activities of Daily Living classroom at another school. *Id.*

On May 17, 2019, an ARD meeting was conducted. *Id.* at 4. During this meeting, Elizabeth was allegedly assured that W.S.'s disability, risk profile, and reasonable accommodations (i.e. heighten supervision) were documented in W.S.'s IEP. *Id.*

On June 22, 2019, W.S. ingested a plastic straw and a pen cap during extended school year enrollment. *Id.* In an e-mail recounting the incident to DISD employees, Elizabeth explained that she found the straw and pen cap in W.S.'s stool. *Id.* The e-mail reiterated W.S.'s need for increased supervision and his proclivity to swallow inedible objects when left unsupervised. *Id.* In a follow-up meeting, it was decided that W.S. should have one-on-one supervision during the extended school year enrollment. *Id.* at 5. Elizabeth alleges that one-on-one supervision was not sufficiently provided even after subsequent follow-ups. *Id.* at 6.

On September 5, 2019, the school nurse notified Elizabeth that W.S. was acting unusual. Two days later, Elizabeth found a plastic wrapper in W.S.'s stool. *Id.* After Elizabeth filed complaints with the Texas Department of Family and Protective Services, a caseworker investigated the complaints and allegedly found that based on

4

video evidence, W.S. was not properly supervised on September 5, 2019 and September 6, 2018. *Id.* The video evidence purportedly shows W.S. eating plastic wrappers, Kleenex, napkins, and magazine pages. *Id.* One of the DISD employees was allegedly seated across from W.S. while he ate the magazine pages. *Id.* at 7. W.S. was also purportedly seen spending time unsupervised in the restroom, where rubber gloves are allegedly stored. *Id.*

On September 17, 2019, W.S. was admitted to the hospital, where an x-ray showed objects in W.S.'s stomach. *Id.* He was taken into surgery, and the doctors removed six rubber gloves from W.S.'s stomach. *Id.* Plaintiff contends that these are the same gloves used to change diapers in W.S.'s classroom. *Id.* The Texas Department of Family and Protective Services conducted another investigation and issued a Notice of Findings that determined two of Defendant's employees engaged in neglectful supervision. *Id.*

Plaintiff posits that he incurred medical expenses, mental anguish, and pain and suffering because of Defendant's allegedly discriminatory acts and omissions culminating in a failure to provide a safe environment at school and failure to modify its service to protect Plaintiff. *Id.* Plaintiff alleges claims for (1) violating Section 504 of the Rehabilitation Act of 1973 and (2) violating of Title II of the ADA. According to the record, there is nothing indicating that Plaintiff has exhausted administrative remedies under the IDEA.

Defendant filed the present Motion to Dismiss, asserting two alternative grounds for dismissal. First, Defendant argues that all claims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(1) because the essence of the Complaint is that Defendant's acts and omissions resulted in denial of free access to public education or alleged deprivation of education opportunity ("FAPE"), and thus Plaintiff must exhaust administrative remedies under the IDEA before this Court has jurisdiction over this matter. *See* Mot., Doc. No. 11, at 1-2. Second, Defendant argues that even if Plaintiff's claims are not subject to administrative exhaustion, Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because the Complaint lacks sufficient factual allegations that Defendant intentionally discriminated against W.S. as required by Section 504 and the ADA. *Id.* at 2-3.

The responsive briefing is complete, and the Motion to Dismiss is now ripe for review.

## II.   Legal Standard

Defendant brings its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### a.  Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The court "must presume that a suit lies

outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). When a federal court determines that it lacks subject matter jurisdiction, the court must dismiss the case. *See Stockman*, 138 F.3d at 151. In determining a Rule 12(b)(1) motion, the court may consider "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). If a Rule 12(b)(1) motion is made without including evidence, the attack on the court's subject matter jurisdiction is facial rather than factual. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In that instance, the court "looks only at the sufficiency of the allegations in the pleading and assumes them to be true." *Id.* (citation omitted).

### b. Federal Rule of Civil Procedure 12(b)(6)

In considering a Rule 12(b)(6) motion, a court must determine whether the plaintiff sufficiently stated a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A well-pleaded complaint must allege facts upon which the claims are based and not be a conclusory recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must state sufficient facts such that the "claim has facial plausibility" and is not merely "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff pleads a claim with facial plausibility when

the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable." *Id.* This pleading standard does not require "'detailed factual allegations,' but it demands more than an unadorned [] accusation . . . that is devoid of 'further factual'" support. *Iqbal*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 555). The complaint must allege sufficient facts to "give the defendant fair notice" of plaintiff's claims against the defendant. *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). The Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

## III.   Analysis

In the Motion to Dismiss, Defendant offers two alternative grounds for dismissal. First, Defendant argues that all claims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(1) because the Complaint in essence concerns Defendant's acts and omissions that resulted in denial of free access to public education or alleged deprivation of education opportunity ("FAPE") and therefore Plaintiff must exhaust administrative remedies under the IDEA before the Court has jurisdiction over this matter. *See* Mot. at 1-2.

8

Second, and in the alternative, Defendant argues that even if Plaintiff's claims are not subject to administrative exhaustion, Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because the Complaint lacks sufficient factual allegations that Defendant intentionally discriminated against W.S. as required by Section 504 and the ADA. *Id.* at 2-3.

Because Plaintiff's claims under Section 504 and the ADA are complaints regarding the denial of free access to public education and thus subject to the exhaustion of administrative remedies under the IDEA, the Court find it lacks subject matter jurisdiction over this case at this time. The Court therefore **grants** the Motion to Dismiss and **dismisses** the Plaintiff's claims against Defendant **without prejudice**. Because the Court concludes that exhaustion of administrative remedies under the IDEA is required and that the Court lacks jurisdiction over the case, the Court declines to comment or rule on Defendant's alternative grounds for dismissal under Federal Rule of Civil Procedure 12(b)(6).

The Court explains its reasoning for dismissal under Federal Rule of Civil Procedure 12(b)(1) as follows.

### A. Exhaustion of Administrative Remedies Under the IDEA is Required

The Court will first address Defendant's argument that the Court lacks jurisdiction over this case because Plaintiff has failed to first exhaust administrative remedies under the IDEA.

According to the IDEA, any issue that concerns the identification, evaluation, educational placement, or provision of free appropriate public education to a disabled child must first be heard in an administrative hearing pursuant to procedures established by the state educational agency. *See* 20 U.S.C. § 1415(i). In Texas, this type of complaint is subject to a due process hearing conducted by the Texas Education Agency ("TEA"). *See* 20 U.S.C. § 1415(f)(1)(A); 19 TEX. ADMIN. CODE § 89.1151(b). A party aggrieved by the findings of the TEA may bring an action in federal or state court. 20 U.S.C. § 1415(i)(2)(A).

The Supreme Court and the Fifth Circuit both acknowledge that while the IDEA does not displace laws that may assist disabled children in receiving education, plaintiffs must first exhaust the IDEA's administrative process. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749 (2017); *McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 644 (5th Cir. 2019). The IDEA explicitly states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). Therefore, exhaustion is required for any lawsuit that seeks relief also available under the IDEA. *Id.*

According to the Supreme Court in *Fry v. Napoleon Community School*, in determining whether exhaustion of administrative remedies under the IDEA is required, the court must consider whether the remedy sought is for the denial of FAPE or some other form of relief. 137 S. Ct. at 754-55. The IDEA achieves its goal by providing instruction and *related services* tailored to the child's unique needs. *Id.* at 755 (emphasis added). The Supreme Court explained that courts must look to the "gravamen" of the claims to decide whether the complaint focuses on the "means and ends" of the IDEA and thus requires exhaustion of administrative remedies. *Id.* at 752.

The gravamen, or essence, of the complaint is a case-specific analysis of the substance of the complaint, despite the language used. *Id.* at 755. The Supreme Court identified several methods for determining the substance of a plaintiff's claims in the context of conduct that might violate the IDEA, Section 504, and the ADA. *Id.* at 755-57. First, court should ignore the "use (or non-use) of particular labels and terms" and look to the substance of the complaint. *Id.* at 755. The Fifth Circuit has noted that while substance trumps labels and terms used in the complaint, another clue is the use of IDEA language. *McMillen*, 939 F.3d at 645. Second, courts should consider and compare the "means and ends" of the IDEA, Section 504, and the ADA. *Id.* at 755-56. Third, courts should pose two hypothetical questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school – say, a public theater or a library? And second, could an adult at the school—say, an employee or a visitor—have pressed essentially the same grievance? . . . [W]hen the answer is no, then the complaint probably does

11

concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 756. Lastly, courts should note the history of the proceedings to determine if relief for denial of FAPE was ever part of the dispute. *Id.* at 757.

 According to the Fifth Circuit, a clue that the gravamen of the claim focuses on relief under the IDEA is a complaint of a school's failure to adopt an individualized plan for a student's needs. *McMillen*, 939 F.3d at 645. In *Heston v. Austin Independent School District*, the Fifth Circuit opined on a factually similar case (explained at length below) and affirmed a district court's dismissal of Section 504 and ADA claims concerning lack of one-on-one supervision accommodations for a disabled student. 816 Fed. App'x. 977, 981 (5th Cir. 2020). This holding hinged on the fact that the disabled student's claims were "premised on requiring 'appropriate and necessary accommodations' tailored to [the disabled student's] 'unique and individualized needs.'" *Id.* The Fifth Circuit found that the complaint at heart fundamentally concerned the student's educational needs and required exhaustion under the IDEA.

With this legal groundwork set out, the Court now turns to its analysis of the present case. Plaintiff's claims concern his physical safety at school. Plaintiff alleges that DISD failed to provide sufficient one-on-one supervision, even after several notices, follow-up e-mails, and ARD meetings. After each alleged swallowing incident, Elizabeth purportedly requested one-on-one supervision for W.S., but the requests were purportedly not met and led to W.S. having surgery to remove surgical gloves

12

from his stomach.  Plaintiff claims that DISD violated his rights under Section 504 because it failed to provide a safe environment for W.S. after repeated notices and requests. Compl. at 8. In addition, Plaintiff alleges that DISD violated his rights under the ADA by failing to accommodate him with one-on-one supervision to prevent him from swallowing inedible objects. *Id.* Plaintiff alleges that DISD acknowledged training issues needed to be addressed but did not improve the situation, leading to more incidents of Plaintiff eating inedible objects. *Id.* at 3-4. Plaintiff asserts that after an ARD meeting, the IEP was properly updated to include W.S.'s disability, reasonable accommodations, and risk profile. *Id.* at 4. After another meeting with a DISD employee, it was determined that W.S. would receive one-on-one supervision during extended summer enrollment to prevent more swallowing incidents. *Id.* at 5-6. In Plaintiff's view, his Complaint centers on discrimination and failure to reasonably accommodated, inherently unrelated to the educational context and provision of FAPE.

In contrast, Defendant argues that Plaintiff's claims are subject to exhaustion of administrative remedies under the IDEA because the substance and language of the pleadings show that the gravamen of the Complaint is about denial of FAPE. The Court agrees.

Defendant contends that Plaintiff refashions an IDEA claim as Section 504 and ADA claims, alleging that DISD "fail[ed] to provide a safe environment for Plaintiff" based on his disability because DISD did not provide one-on-one supervision at all times and that DISD "failed to reasonably accommodate Plaintiff's disability and

modify its services." Mot. at 9. According to Defendant, the "services" Plaintiff refers to are "special education and supplementary aids and services" that W.S. is entitled to under the IDEA based on his disability. *Id.* Defendant points out that the Complaint admits the IEP "clearly states that he must have constant supervision for his safety." *Id.* at 10 (citing Compl. at 5). In Defendant's view, and the Court's view, complaints about deficiency of supervision provided through W.S.'s IEP are complaints about the implementation of his IEP and thus fundamentally related to the denial of FAPE.

Plaintiff attempts to argue his claims center on requiring reasonable accommodations and have "no inherent relationship to the provision of a free appropriate public education or to the school setting." Resp., Doc. No. 12, at 10. In short, Plaintiff contends that he "challenges DISD's failure to provide reasonable accommodations to prevent injury at its public facility, regardless of whether or not Plaintiff was engaged in any educational activity." *Id.* Plaintiff asserts that he references his IEP to demonstrate DISD was notified of the requested reasonable accommodations and that he does not argue that the IEP was flawed. *Id.* at 11.

From the substance of the Complaint, it is clear that Plaintiff's claims derive from the requirement to provide FAPE. At core, Plaintiff simply alleges DISD failed provide one-on-one supervision for W.S. That one-on-one supervision is part of W.S.'s IEP, which is "the vehicle or means of providing a FAPE." *See Fry*, 137 S. Ct. at 757. A complaint about the execution of W.S.'s IEP is fundamentally a complaint about the denial of FAPE. *See id.* The Fifth Circuit recently opined that "complaints that a school

14

did not adopt a plan individualized to the student's needs sound in IDEA." *Heston*, 816 Fed. App'x. at 981. Because Plaintiff, in essence, argues that DISD failed to implement the individualized plan of one-on-one supervision, the Court finds that the substance of the Complaint sounds in IDEA and concerns a failure to provide FAPE.

While the Court must look beyond the use of "particular labels and terms," usage of IDEA language in the Complaint is a strong indicator that denial of FAPE is at the heart of a matter. *See Fry*, 137 S. Ct. at 755. Plaintiff contends that he strictly uses reasonable accommodation language. In contrast, Defendant posits that IDEA lingo lives throughout the Complaint. Plaintiff blatantly references his IEP and ARD meetings where the IEP was reviewed to address issues related to Plaintiff swallowing inedible objects. Defendant further supports its position by citing to cases from the Fifth Circuit and the Northern District of Texas where terms like IEP, ARD, and other IDEA language were found to indicate that non-IDEA claims arise from the denial of FAPE. *See* Mot. at 14 (citing *McMillen*, 939 F.3d at 645; *Angela B. v. Dallas ISD*, No. 3:20-CV-0188, 2020 WL 2101228, at *5 (N.D. Tex. May 1, 2020) (Fitzwater, S.J.)). Plaintiff asserts that it only references the IEP to demonstrate that DISD was aware of his need for one-on-one supervision and that he does not contend the IEP is flawed. Resp. at 11. The Court finds this distinction to be of little weight. A denial of FAPE and failure to implement the IEP are one in the same under these specific facts. While the Complaint does not contain an overwhelming amount of IDEA language, it is

15

enough, coupled with the clear substantive connection to denial of FAPE, for the Court to find administrate exhaustion of remedies under the IDEA is required.

The Court's analysis could stop here as the Court has found that the very essence of Plaintiff's Complaint sounds in IDEA. Nonetheless, the Court turns to the Supreme Court's hypothetical-question test set forth in *Fry* to further support its finding that administrative exhaustion under the IDEA is required before this Court has subject matter jurisdiction.

According to the Supreme Court, when it is ambiguous whether a complaint "concerns the denial of a FAPE, or instead addresses disability-based discrimination," the court should ask two hypothetical questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not at a school – say, a public theater or a library? And second, could an adult at the school—say, an employee or a visitor—have pressed essentially the same grievance? . . . [W]hen the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Fry,* 137 S. Ct. at 756.

Here, the answer to both hypothetical questions is "no". W.S. would have no claim for failure to accommodate in a public theater or library because those facilities are not required to accommodate a learning disability by providing a trained aide to supervise W.S. and prevent him from swallowing inedible items. Likewise, an adult at the school would also have no claim under Section 504 or the ADA under these facts

16

because the school is not required to provide trained supervision to prevent adults who visit the building from swallowing inedible items. Under the present facts, any argument to the contrary is absurd. Without citing to any case law, Plaintiff argues it is conceivable that "a scenario could arise in a health care facility, in a detention facility, or any other kind of public facility in which an entity or agency has a duty of care for or to address the needs of an individual with disability" or that an adult visitor at the school who had something like Prader-Willi syndrome could bring ADA and Section 504 claims for the school district's failure to supervise and accommodate for this visitor. Resp. at 13-14. Without making any determinations on how claims with such hypothetical facts may play out before this Court, the Court finds these arguments weak and the examples fundamentally different. It is clear under the current facts that the answer to the two *Fry* questions is "no". Plaintiff's Complaint does not simply seek relief for discrimination and failure to reasonably accommodate untethered to DISD's duty to provide a FAPE. Rather, Plaintiff complains about the adequacy of the "individually tailored educational services" provided to him under the IDEA. *See Fry*, 137 S. Ct. at 756. As such, the Court finds administrative exhaustion is required.

The history of the proceedings is a neutral factor in the Court's analysis. Nothing in the record indicates that Plaintiff attempted to pursue administrative remedies with the TEA or other relief under the IDEA. Nonetheless, the Court finds that more than sufficient grounds exist to dismiss this case for failure to first exhaust administrative remedies.

Notably, there is an exception to administrative exhaustion under the IDEA for "claims that are solely concerned with physical injury and abuse." *Heston*, 816 Fed. Appx. at 979. Plaintiff argues that his claims fall under this exception because they solely concern physical injury. However, Plaintiff's view of the exception in *Heston* is misguided. The Court will summarize the case to explain why Plaintiff's claims, just like the disabled student's claims in *Heston*, do not solely concern physical injury. In *Heston*, a mother sued a school district on behalf of her disabled student, alleging claims under the ADA, Section 504, and other claims. *Id.* The disabled student was under an IEP to accommodate his disabilities and eventually was given a one-on-one aide after the mother repeatedly complained of improper supervision. *Id.* One day, the disabled student had a breakdown; the supervising aide allegedly threw a trash bin at the disabled student; and the disabled student incurred physical injuries. *Id.* Just like DISD did here, the school district moved to dismiss all claims, arguing that the Section 504 and ADA claims dealt with the provision of educational services and were therefore barred for failure to exhaust administrative remedies. *Id.* Evaluating the substance of the pleadings and considering the hypothetical questions in *Fry*, the district court found that "the claims were, at core, disputes related to [] educational needs and thus subject to the IDEA's exhaustion requirement" and dismissed the claims without prejudice. *Id.* On appeal, the Fifth Circuit affirmed the district court's decision because the claims as presented had to do with the proper provision of educational services and required administrative exhaustion. *Id.* at 984. The Fifth Circuit acknowledge that claims solely

18

concerned with physical injury and abuse are not subject to the exhaustion requirements of the IDEA. *Id.* at 982. But the Fifth Circuit goes on to explain that while the disabled student spotlighted the aide's conduct that led to physical injury, the claims stemmed from a failure to train and supervise educational staff. *Id.* The claims framed as failure to accommodate really concerned special education services and the adequacy of the aide, so the Fifth Circuit held that the claims fell "squarely within the ambit of [the disabled student's] educational needs." *Id.*

Like the disabled student in *Heston* who needed extra supervision, W.S. needs, and has requested, heightened supervision to prevent him from swallowing inedible objects. The Fifth Circuit held that this extra supervision and training requested in *Heston* fell into the category of failure to provide proper educational accommodations and oversight in the form of an adequately trained and supervised teaching aide for the child—and thus the claims required administrative exhaustion. Here, Plaintiff's claims fall in the same category because the core of Plaintiff's allegations is that W.S. did not receive sufficient accommodations of increased supervision.

The disabled student in *Heston*, like Plaintiff here, argued that his claims solely concerned with physical injury and abuse were not subject to the exhaustion requirements of the IDEA. *See id.* at 982 (internal citations omitted). In *Heston*, the disabled student did not allege that the supervising aide committed acts of random violence against the disabled student, but rather that instead of providing correct accommodations, the aide was physically and verbally abusive. *Id.* at 982. But Fifth

Circuit held that the claims fell within the ambit of the disable student educational needs, even though the aide allegedly acted with physical violence against the disabled student. *Id.* Here, there are no allegations that the physical injuries incurred by W.S. were the result of any affirmative violence or physical abuse by a DISD employee. Rather, Plaintiff alleges that the lack of proper supervision led to the ingestion of inedible objects. Just like in *Heston*, the lack of proper supervision and accommodation for W.S. concerns educational services and training of his supervising aides. Given that the Fifth Circuit held that even an affirmative act of alleged violence by a supervising aide against a disabled student did not equate to the type of physical injury and abuse that circumvents the exhaustion requirements of the IDEA when the situation concerns special education services, this Court finds that the facts before it—which do not include any overt violence toward W.S.—do not rise to the level of physical injury and abuse that circumvents the exhaustion requirement.  Exhaustion is necessary.

Because the Court finds that Plaintiff's claims seek relief for denial of FAPE and must first exhaust administrative remedies under the IDEA, the Court finds that it lacks jurisdiction over this case. As such, the Court **grants** the Motion to Dismiss and **dismisses** the case without prejudice under Federal Rule of Civil Procedure 12(b)(1).

### B.  Failure to State a Claim Under Rule 12(b)(6)

Because the Court finds that Plaintiff must seek administrative remedies under the IDEA, the Court necessarily lacks jurisdiction over this case. Since the Court lacks

jurisdiction, the Court declines to opine on how it would rule on Defendant's alternative grounds for dismissal under Federal Rule of Civil Procedure 12(b)(6).

## IV.  Conclusion

Because the Court finds that the gravamen of Plaintiff's Complaint seeks relief for the denial of FAPE and that Plaintiff must seek administrative remedies under the IDEA, the Court concludes that it lacks jurisdiction over this case before such exhaustion. The Court **GRANTS** Defendant's Motion to Dismiss and hereby **DISMISSES** Plaintiff's claims **without prejudice**.

**SO ORDERED.**

Signed July 23rd, 2021.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE